# Mobile Fish & Oyster Co. *v.* Craft.

### Assumpsit.

(Decided June 15, 1916.   72 South. 399.)

1. **Fish and Oysters; Commission; Ultra Vires; Salary.**—Acts 1911, p. 458, et seq., was repealed by Acts 1915, p. 145, and Acts 1915, p. 739, and yet, the endorsement of a note, payable to the commission to its president in part payment of a salary, was not an ultra vires act, nor a defense available to the maker of the note.

[Mobile Fish & Oyster Co. v. Craft.]

2. **Corporations; Ultra Vires.**—Strictly speaking, an act is said to be ultra vires when it is not within the scope of the powers of the corporation to perform it under any circumstances, or for any purpose.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Assumpsit by John Craft against the Mobile Fish & Oyster Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Six days before the act abolishing the Alabama Oyster Commission, a note for $587 and an open account due the Alabama Oyster Commission by the Mobile Fish & Oyster Company, as a balance for rental of oyster bottoms, was transferred to John Craft, the president of the Alabama Oyster Commission by the said commission, in part payment of his salary for that year.

As a defense to the suit, a plea of the general issue was interposed, and a plea setting up the creation of the commission and quoting sections 10 and 42 of the act of 1911, approved April 18, 1911, page 458, and alleging that while the suit was pending, and before the day set for its trial, the state of Alabama passed an act abolishing its commission, and that, after the bill to abolish said commission had been passed, the note sued on was indorsed by said commission to the plaintiff in payment of salary it was claimed was owing by said commission, to the president of said commission, and that the act of indorsing said account to plaintiff in payment of such salary was unauthorized and void.

ERVIN & MCALEER, for appellant. INGE & MCLEOD, for appellee.

SAYRE, J.—Plaintiff (appellee) recovered judgment against the Mobile Fish & Oyster Company as indorsee of defendant's certain promissory note made payable to the Alabama Oyster Commission and as assignee of a certain account due from the company to the commission; said note and account having been accepted by plaintiff in payment pro tanto of salary due him as president of the commission. The defense was that it was without the power of the Oyster Commission to thus transfer the note and account to plaintiff.

(1) It would not be a violent presumption to suppose that the Oyster Commission was without funds at the time, and adopted this expedient in anticipation of the approval of an act,

then passed by the Legislature and a few days later approved by
the Governor, by which the act creating the Alabama Oyster Com-
mission was repealed.—Act approved Feb. 25, 1915; Acts, p. 145.
But it is impossible to conceive that the emergency presented
by the pendency of the Governor's approval of the repealing act
had any effect by way of enlarging the powers previously exer-
cised by the commission under the act of its creation.   Equally
clear is it, on the other hand, that the act of September 29, 1915
(Acts, p. 739), providing funds for the payment of salaries due
from the commission to its officers and employees and unpaid at
the time of its abolition, did not invalidate the transfers in ques-
tion if they were at the time of their execution within the lawful
powers of the commission.

The Alabama Oyster Commission was a public corporation;
it was an organ of the state chartered for the exercise of a part
of the police power in order that its sea-food industries and their
source of supply might be developed and protected.   It is to be
conceded that it had only such powers as were expressed in the
act of its creation and such as were necessarily implied as inci-
dental to the purposes and objects for which it was created.   It
was not a business corporation; but to it was intrusted the power
to collect from designated sources, by suit if necessary, funds
with which to defray the expenses of its operations and to dis-
burse those funds.   Section 10 of the act (Acts 1911, p. 458)
provided:   "That all monies received by the commission for the
payment of taxes or issuance of license or in any other manner
under the provisions of this act, except the sum of 50 cents for
each license to be retained by the secretary, shall be deposited
in some bank in Mobile to be designated by the commission as its
depository, to the credit of the Alabama Oyster Commission, to
be drawn out on checks signed by the secretary and counter-
signed by the president of the commission."

Section 42 was much the same; but defendant relied upon it in
connection with section 10, and we quote it as follows:   "That all
monies arising from leases, fines, taxes,   *   *   *   forfeitures,
or any other source whatsoever, which may come into the hands
of the commission under the provisions of this act shall be paid
over to the secretary of the commission and shall be by him de-
posited in some bank in the city of Mobile to be designated by the
commission as its depository.   That all accounts of the commis-
sion for salaries, services, or expenses in carrying out the provi-

sions of this act shall be audited by the commission and payment authorized and made upon warrants drawn by the secretary and countersigned by the president."

(2) Strictly speaking, a corporate act is said to be "ultra vires" when it is not within the scope of the powers of the corporation to perform it under any circumstances or for any purpose.—*Buck Creek L. Co. v. Nelson,* 188 Ala. 243, 66 South. 476. Sometimes the mode in which a power is to be exercised measures the power itself, as where substantial rights are made to depend upon an observance of the specific mode in which the statute requires the power to be exercised. We do not think such is the case here. The provisions, quoted above, were regulations to better secure the safe-keeping and proper disbursement of the moneys collected by the commission. The commission held defendant's note and account in trust, among other things, to pay plaintiff's salary out of the proceeds. The state's interest in the particular transaction was that defendant's obligations should be utilized for the purpose to which they had been devoted by the act. Defendant's only interest was that it be not put in danger of being required to pay twice. The good faith of the transaction was not questioned, nor was it denied that it was intended to be just what, on the evidence, it purported to be. Nor can it be denied that, if the transaction in question was ineffectual for the purpose intended, defendant remained liable to the commission, or that, even now, it ought to be compelled to pay the state under appropriate provisions of the act abolishing the commission. These interests have been subserved, these purposes have been accomplished, nor has there been a departure from the literal mandate of the statute, for these obligations were not money. Plainly, then, defendant's objection went merely to the mode in which plaintiff's salary was paid, rather than to the thing accomplished by the transfers. It went to the failure of the commission to observe a regulation in which the deefndant had no interest and which, at best, was inapt to the circumstances of the transaction. If these debts had been collected by the commission and the proceeds turned over to plaintiff in payment of salary due him without being first deposited in the bank, it would hardly be a correct application of the doctrine of ultra vires to permit any party in interest to say that plaintiff's salary had not been paid. We think therefore that the transaction under consideration, by which the commission transferred and plaintiff

accepted the note and account in lieu of cash at their face values, without affecting the true interest or jeopardizing the rights of any party concerned except perhaps plaintiff, cannot be held for an unlawful conversion of the choses in action transferred, and hence that the trial court correctly denied defendant's plea of ultra vires, and this we hold without conceding that the commission might have traded in the notes and accounts payable to it or might have made itself liable as indorsed in any case.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and GARDNER, JJ., concur.